UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>FINANCIAL TREE dba FINANCIAL TREE TRUST; FINANCIAL SOLUTION GROUP dba FINANCIAL SOLUTION GROUP TRUST; NEW MONEY ADVISORS, LLC; THE LAW FIRM OF JOHN GLENN, P.C.; JOHN D. BLACK aka JOHN BARNES; CHRISTOPHER MANCUSO; JOSEPH TUFO; and JOHN P. GLENN,<br><br>Defendants;<br><br>SUISSE GROUP (USA) LLC; JMC INDUSTRIES LLC; LANDES CAPITAL MANAGEMENT, LLC; KINGDOM TRUST LLC; HERBERT CASWELL; ANNE MANCUSO; and TYLER MANCUSO,<br><br>Relief Defendants. | No. 2:20-cv-01184-TLN-AC<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION AND OTHER EQUITABLE RELIEF** |

Presently before the Court is Plaintiff Commodity Futures Trading Commission's ("CFTC") Motion for Preliminary Injunction and Other Equitable Relief pursuant to Section 6c(a) of the Commodity Exchange Act ("Act"), 7 U.S.C. § 13a-1(a) (2018), and Federal Rule of Civil

Procedure ("Rule") 65, in which CFTC seeks an order continuing the Court's July 2, 2020 Statutory Restraining Order ("SRO") freezing Assets, allowing for the inspection of Records, and requiring CFTC access to those Records (ECF No. 9).[1] (*See* ECF Nos. 3, 26–27.) CFTC additionally seeks an order requiring an accounting and enjoining future violations of the Act and Commission Regulations ("Regulations"), as well as engaging in commodity-related activities. (*See* ECF Nos. 3, 26–27.) For the reasons set forth below, CFTC's Motion is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

The Court need not recount all background facts as set forth fully in the Court's July 2, 2020 Order granting CFTC's request for SRO. (ECF No. 9.) For purposes of this Order, that background is incorporated by reference here.

On June 15, 2020, CFTC filed a Complaint for Injunctive Relief, Civil Monetary Penalties, Restitution, Disgorgement and Other Equitable Relief against Defendants John D. Black ("Black") and his affiliated entities Financial Tree ("Financial Tree"), Financial Solution Group ("Financial Solution"), and New Money Advisors, LLC ("New Money"); Christopher Mancuso ("Chris Mancuso"); Joseph Tufo ("Tufo"); and John Glenn ("Glenn") and The Law Firm of John Glenn, P.C. (the "Glenn Law Firm") (collectively, "Defendants") and Relief Defendants Suisse Group (USA) LLC ("Suisse Group"); JMC Industries LLC ("JMC"); Landes Capital Management, LLC ("Landes"); Kingdom Trust LLC ("Kingdom"); Herbert Caswell ("Caswell"); Anne Mancuso ("Anne Mancuso"); and Tyler Mancuso ("Tyler Mancuso") (collectively, "Relief Defendants"). The Complaint asserts various violations of the Act and Regulations, including commodity options and retail foreign currency ("forex") fraud, comingling of funds, failure to disclose, and failure to register with CFTC. (ECF No. 1.)

With its Complaint, CFTC moved the Court, pursuant to Section 6c(a) of the Act (7 U.S.C. § 13a-1(a) (2018)) and in accordance with Rule 65 and Local Rule 231, for an Emergency

---

[1] As used herein, "Assets" is defined in the same manner as set forth in this Court's SRO. (*See* ECF No. 9 at 2 n.1.) "Records" is also defined in the same manner as set forth in the SRO. (*Id.* at 2 n.2.)

[2] For ease of reference, the Court will refer to the ECF pagination for the parties' attached exhibits.

*Ex Parte* Motion for a Statutory Restraining Order, Preliminary Injunction, and Other Equitable Relief ("SRO"). (ECF No. 3.) In the Motion for SRO, CFTC explicitly seeks a preliminary injunction ("Motion for Preliminary Injunction") upon the expiration of the SRO. (*Id.*)

On July 2, 2020, after considering CFTC's Motion for SRO and nearly 900 pages of exhibits submitted in support thereof, including the declarations of CFTC's investigator and several individuals allegedly defrauded by Defendants, this Court granted CFTC's Motion for SRO. (ECF No. 9.) Pursuant to the SRO, Defendants and Relief Defendants' Assets were frozen, they were enjoined from destroying, altering, or disposing of their Records, and they were ordered to immediately provide access to such Records to CFTC. (ECF No. 9 at 20–25.) The SRO further ordered Defendants and Relief Defendants to show cause by July 10, 2020, as to why an Order for Preliminary Injunction should not be granted pending the remainder of this litigation. (*Id.* at 26.)

All Defendants and Relief Defendants received notice of CFTC's Motion for SRO/Preliminary Injunction (ECF No. 3) as well as the Court's SRO (ECF No. 9). (*See* ECF Nos. 13–22 (executed Returns of Service for Defendants and Relief Defendants); *see also* ECF Nos. 26-3, 26-4 (attorney and investigator declarations detailing service efforts to Glenn, the Glenn Law Firm, Caswell, Suisse Group, and JMC).)

No Defendant or Relief Defendant, however, has responded to the Court's Order to Show Cause. Moreover, on July 15 and 17, 2020, CFTC filed civil contempt motions against Black, the three entities under his control (Financial Tree, Financial Solution, and New Money), and Mancuso for refusing to comply with the SRO's requirement to immediately allow CFTC to inspect their Records. (ECF Nos. 24, 29.) The hearing for both contempt motions is currently set for August 20, 2020. (*See* ECF Nos. 23, 28.)

On July 17, 2020, CFTC filed a "Reply" reasserting its request for entry of a preliminary injunction to continue the SRO's Asset freeze, prohibition of destruction of Records, and requirement that Defendants and Relief Defendants provide immediate access of their Records to CFTC. (*See* ECF Nos. 26–27.) CFTC additionally requests the preliminary injunction prohibit Defendants from committing future violations of the Act and Regulations, prohibit Defendants

from engaging in commodity-related activities, and require Defendants and Relief Defendants to produce a complete accounting of their finances from January 1, 2015, to the present. (*See id.*)

To date, no Defendant or Relief Defendant has opposed, objected to, or otherwise attempted to respond to this Court's Order to Show Cause. CFTC's Motion for Preliminary Injunction and the evidence submitted in support thereof (ECF No. 3) remain undisputed.

## II.  STANDARD OF LAW

The CFTC is authorized by 7 U.S.C. § 13a-1 to institute an action in federal district court whenever it appears violations of any provision of the Act have occurred. This section also provides that the district court may issue a permanent or temporary injunction against any person who "has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of this chapter or any rule, regulation, or order thereunder." 7 U.S.C. §§ 13a-1(a)–(b); *see also U.S. CFTC v. Driver (Driver)*, 877 F. Supp. 2d 968, 981 (C.D. Cal. 2012), *aff'd sub nom. CFTC v. Driver*, 585 Fed. Appx. 366 (9th Cir. 2014). The legal standards applicable to preliminary injunctions are the same as those applicable to temporary restraining orders. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

"The injunctive relief contemplated in this portion of the Act is remedial in nature, and is designed to prevent injury to the public and to deter future illegal conduct." *U.S. CFTC v. Yu (Yu)*, No. 12-CV-3921 YGR, 2012 WL 3283430, at *4 (N.D. Cal. Aug. 10, 2012). Unlike private actions, in actions for statutory injunctive relief, CFTC need not prove irreparable injury or the inadequacy of other remedies as required in private injunctive suits. *See Driver*, 877 F. Supp. 2d at 981; *CFTC v. Hunt (Hunt)*, 591 F.2d 1211, 1220 (7th Cir. 1979); *Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir. 1983). Rather, a *prima facie* showing that a violation of the law has occurred and that "there is some reasonable likelihood of future violations" is sufficient. *Hunt*, 591 F.2d at 1220; s*ee also Fed. Election Comm'n v. Furgatch*, 869 F.2d 1256, 1261 (9th Cir. 1989) (in cases involving statutory injunctions on the basis of past violations, party moving for injunctive relief must show only that there is a "likelihood" of future violations); *CFTC v. British Am. Commodity Options Corp*. (*British Am.*), 560 F.2d 135, 141–42 (2d Cir.

1977), *cert. denied*, 438 U.S. 905 (1978) ("well-established" that agency need only show reasonable likelihood that wrong will be repeated for injunctive relief); *CFTC v. J. S. Love & Assoc. Options, Ltd.*, 422 F. Supp. 652, 661 (S.D.N.Y. 1976).

**III.   ANALYSIS**

   A.   Jurisdiction/Venue

As determined by the Court in its issuance of the SRO, CFTC's Motion is properly before this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (statutory jurisdiction for cases brought by CFTC for violations of the Act), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1345 (actions brought by the United States or agency authorized to sue by Act of Congress). (ECF No. 9 at 9–10.) Venue properly lies in this District pursuant to 7 U.S.C. § 13a-1(e). (*Id.*)

   B.   *Prima Facie* Violations of the Act and Regulations

CFTC contends Defendants committed fraud and misappropriated funds, failed to properly register with CFTC as commodity pool operators ("CPOs") and associated persons ("APs") of CPOs, comingled funds, and failed to provide clients with specific disclosures and other required documents, in violation of multiple provisions of the Act and Regulations. CFTC further contends Relief Defendants have received and will continue to receive Assets obtained through Defendants' violative conduct and have been unjustifiably enriched thereby.

   *i.   Derivative and Controlling Person Liability*

Under § 13c(b) of the Act (7 U.S.C. § 13c(b)), a controlling person of an entity is liable for the violations of that entity if the controlling person knowingly induced the violations, directly or indirectly, or did not act in good faith. One is a controlling person when he or she has "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person whether through the ownership of voting securities, by contract, or otherwise." *CFTC v. Capitol Equity FX, LLC (Capitol Equity)*, No. EDCV 17-743 JGB (SKx), 2017 WL 9565340, at *4 (C.D. Cal. Jul. 31, 2017); *see also CFTC v. R.J. Fitzgerald & Co. (R.J. Fitzgerald)*, 310 F.3d 1321, 1334 (11th Cir. 2002), *cert denied*, 543 U.S. 1034 (2004). Conversely, the act, omission, or failure of any person acting for an entity within the scope of his

1    employment or office shall be attributed to the entity, as well as the person. *Id.* at 1335 (imposing

2    liability on corporate entity because of acts of individuals); 7 U.S.C. § 2(a)(1)(B) (2018); 17

3    C.F.R. § 1.2 (2019).

4         As previously set forth in the Court's SRO, Black is liable for Financial Tree, Financial

5    Solution, and New Money's violations described herein because he was the creator and

6    controlling person of those entities. (*See* ECF No. 9 at 10–11); *R.J. Fitzgerald*, 310 F.3d at 1334–

7    35; *Capitol Equity*, 2017 WL 9565340, at *4. Similarly, Glenn is liable as a controlling person

8    for the Glenn Law Firms' violations because he is the founder, managing attorney, and only

9    practitioner of the Glenn Law Firm. *See id.*

10        Further, Financial Tree, Financial Solution, New Money, and the Glenn Law Firm are

11   liable for the acts of their agents, i.e., Black, Mancuso, Tufo, and Glenn. (ECF No. 9 at 11); 7

12   U.S.C. § 2(a)(1)(B) (2018); 17 C.F.R. § 1.2 (2019); *CFTC v. Am. Bullion Exch. ABEX Corp. (Am.*

13   *Bullion)*, No. SACV10-1876-DOC (RNBx), 2014 WL 12603558, at *8 (C.D. Cal. Sept. 16,

14   2014). As discussed in the SRO, such acts included opening bank accounts and signing

15   agreements on behalf of Financial Tree, Financial Solution, New Money, and the Glenn Law

16   Firm, and acting as APs for the entities by soliciting new clientele ("Pool Participants") to make

17   investments for the purported purpose of trading binary options and forex contracts in

18   Defendants' commodity pools, the Financial Tree Pool and the Financial Solution Group Pool

19   ("Black Pools"). (ECF No. 9 at 11.)

20        For the foregoing reasons, the Court continues to find CFTC has sufficiently established a

21   *prima facie* case that Defendants are derivatively liable for each other's misconduct.

22           *ii.*    *Violation of Antifraud Provisions of the Act and Regulations*

23        Sections 4b(a)(2)(A)–(C) of the Act (7 U.S.C. § 6b(a)(2)(A)–(C) (2018)) and

24   corresponding Regulation 5.2(b) (17 C.F.R. § 5.2(b) (2019)) prohibit fraudulent activities "in

25   connection with" commodity futures trading. CFTC need only prove three elements to establish

26   its claims of fraud under §§ 4b(a)(2)(A)–(C): (1) the making of a misrepresentation, misleading

27   statement, or deceptive omission; (2) materiality; and (3) scienter. *Driver*, 877 F. Supp. 2d at

28   977; *R.J. Fitzgerald*, 310 F.3d at 1328.

Actionable misrepresentations include those made to customers when soliciting their funds. *Saxe v. E.F. Hutton & Co.*, 789 F.2d 105, 111 (2d Cir. 1986). "A statement [or omission] is material if it is substantially likely that a reasonable investor would consider the matter important in making an investment decision." *Driver*, 877 F. Supp. 2d at 977 (citing *R.J. Fitzgerald*, 310 F.3d at 1332–33). Finally, proof of scienter need not establish "evil motive or an intent to injure," but merely requires evidence that a defendant committed the alleged wrongful acts intentionally, or "that the representations were made with a reckless disregard for their truth or falsity." *Driver*, 877 F. Supp. 2d at 977; *see also CFTC v. Noble Metals Int'l, Inc. (Noble Metals)*, 67 F.3d 766, 774 (9th Cir. 1995) (holding that scienter is established when defendants act intentionally or with "careless disregard").

The antifraud provisions of § 4c(b) of the Act (7 U.S.C. § 6c(b) (2018)) and corresponding Regulations 32.4 (17 C.F.R. § 32.4 (2019)) apply to fraud in connection with commodity options trading, such that the same misrepresentations and omissions that violate § 4b in connection with futures trading also violate § 4c(b) and Regulation 32.4 (17 C.F.R. § 32.4 (2019)) in connection with options. *See CFTC v. Rosenberg (Rosenberg)*, 85 F. Supp. 2d 424, 445 (D. N.J. 2000) (analyzing §§ 4b(a) and 4c(b) claims together).

Sections 4o(1)(A) and (B) of the Act (7 U.S.C. § 6o(1)(A)–(B) (2018)) make it unlawful for a commodity pool operator to engage in fraudulent activities in connection with commodity futures trading. The elements of proof for § 4o(1) overlap with the elements of proof for § 4b(a). *Driver*, 877 F.Supp.2d at 978–79 ("The same intentional or reckless misappropriations, misrepresentations, and omissions of material fact violative of section 4b of the Act . . . also violate section 4o(1)(A)–(B) of the Act"). Fraud as a commodity pool operator, however, does not require scienter. *CFTC v. Savage*, 611 F.2d 270, 285 (9th Cir. 1979).

In moving for a preliminary injunction, CFTC asserts Defendants committed fraud in violation of the aforementioned antifraud provisions of the Act and the Regulations by making material misrepresentations and omissions to Pool Participants, issuing false account statements to Pool Participants, and misappropriating pool funds for personal use and to make Ponzi

///

payments.[3]  As the Court set forth in its Order on CFTC's SRO, the Court continues to find CFTC's Motion and supporting documents, which are now unopposed by Defendants or Relief Defendants, make a *prima facie* showing of fraud in violation of the Act and Regulations.

### a)  Fraud by Misrepresentations and Omissions

Simply put, CFTC makes a *prima facie* showing that Defendants knowingly or recklessly made several misrepresentations or omissions to solicit funds from current and prospective Pool Participants, which constitute violations of the Act.  *Saxe*, 789 F.2d at 111.  These misrepresentations and omissions include but are not limited to: (1) misrepresenting that pool funds would be held in a fiduciary-protected, separate bank account and used as collateral to establish lines of credit to trade binary options and/or forex on Pool Participants' behalf; (2) misrepresenting that the pools would yield 10–70% monthly returns; (3) misrepresenting that more than 85% of Defendants' trades were successful; (4) misrepresenting profits by issuing false account statements that reflected non-existent gains; (5) misrepresenting their failure to return funds requested by Pool Participants with various excuses; (6) omitting from prospective Pool Participants that they were not returning principal or delivering profits as promised; (7) omitting that the California Department of Business Oversight ("California DBO") previously issued a Desist and Refrain Order against Financial Solution, Black, and Mancuso for their actions in connection with the Black Pools; (8) when confronted by Pool Participants about the order, misrepresenting that it was "resolved some time ago … [relating to] a currency program that was not our service" (*see* ECF No. 9 at 15); (9) omitting that Defendants would pay themselves approximately 43% of pool fund principal received prior to trading any funds; (10) omitting that purported profits or withdrawals of principal paid to some Pool Participants were in fact the principal deposits of other clients and were not generated by profitable trading activity; and (11) omitting that no Defendant was registered with CFTC as required by the Act and Regulations to

---

[3]  A "Ponzi scheme" is a "fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments." *Black's Law Dictionary* (10th ed. 2014).  In ordinary operation (and as used herein), a "Ponzi payment" occurs when "[m]oney from the new investors is used directly to repay or pay interest to earlier investors, usually without any operation or revenue-producing activity other than the continual raising of new funds." *Id.*

trade binary options and/or forex.  (*See* ECF No. 9 at 13–14); *R.J. Fitzgerald*, 310 F.3d at 1329, 1332–33 (overemphasis of profit potential, downplayed risk of loss, and failure to disclose 95% of firm's clients lost money on transactions were actionable misrepresentations); *CFTC v. Muller (Muller)*, 570 F.2d 1296, 1300–01 (5th Cir. 1978) (failure to open trading account and issuance of fictitious trade statements was actionable misrepresentation); *CFTC v. Complete Devs. (Complete Devs.)*, No. 4:10 CV 2287, 2014 WL 794181, at *17 (N.D. Ohio Feb. 26, 2014) (failure to disclose details regarding commissions based on investments was actionable); *SEC v. Wang*, No. LA CV 13-07553 JAK (SSx), 2015 WL 12656906, at *17 (C.D. Cal. Aug. 18, 2015); *United States v. Brown*, 578 F.2d 1280, 1285 (9th Cir. 1978) (lulling activities constituted misrepresentations).

These misrepresentations and omissions constitute information that a reasonable investor would consider important in making an investment decision and are therefore "material" under the Act's antifraud provisions.  (*See* ECF No. 9 at 14–15); *Driver*, 877 F. Supp. 2d at 977; *R.J. Fitzgerald*, 310 F.3d at 1332–33 (riskiness and profitability of an investment are material); *Capitol Equity*, 2017 WL 9565340, at *4 (misrepresentations that a pool is consistently profitable and employs loss-limiting systems are material); *Am. Bullion*, 2014 WL 12603558, at *6 (location of investors' money is material); *Rosenberg*, 85 F. Supp. 2d at 447–48 (reporting erroneous account balances, issuing false monthly statements, and failure to make trades in accordance with representations were material to investors); *CFTC v. Commonwealth Fin. Grp., Inc.*, 874 F. Supp. 1345, 1353–54 (S.D. Fla. 1994) (facts regarding a firm or broker's trading experience and past success are material).

Moreover, the Court finds Defendants' misrepresentations and omissions were made intentionally and with knowledge of their falsity, thus establishing scienter.  (*See* ECF No. 9 at 15–16); *Complete Devs.*, 2014 WL 794181, at *17 (failure to conduct sufficient diligence on an investment prior to soliciting customers for the investment is reckless); *SEC v. Holschuh*, 694 F.2d 130, 144 (7th Cir. 1982) (lulling activities can evidence scienter).  Indeed, CFTC submitted overwhelming evidence that, contrary to Defendants' representations, binary options and forex trading is incredibly risky with no guaranteed returns, *R.J. Fitzgerald*, 310 F.3d at 1333;

Defendants had actually traded very few pool funds in binary options or forex, and the trades that were completed resulted in significant losses of funds; all pool funds deposited in a Glenn Law Firm account were immediately thereafter transferred to Defendants' personal and business accounts to make Ponzi payments and fund Defendants' personal expenses, rather than for trading purposes; and the California DBO Desist and Refrain Order was expressly issued against Financial Solution, Black, and Mancuso in connection with the Black Pools. (*See* ECF No. 9 at 15–16.) Further, Defendants knowingly continued to solicit new Pool Participants even while failing to return principal investments or deliver profits to other Pool Participants, and even after the California DBO issued its order. (*See id.*)

Accordingly, Defendants' misrepresentations and omissions constitute violations of the antifraud provisions of the Act and Regulations. *Driver*, 877 F. Supp. 2d at 977; *R.J. Fitzgerald*, 310 F.3d at 1328.

*b) Fraud by Misappropriation*

CFTC has also submitted evidence showing that Defendants misappropriated pool funds intended for binary options and forex contracts trading to instead make Ponzi payments to existing Pool Participants and to fund Defendants' personal expenses. (*See* ECF No. 9 at 16–17); *Driver*, 877 F. Supp. 2d at 978 ("Soliciting or obtaining funds from investors for trading, then failing to trade the funds while using them for personal and business expenses, is misappropriation."). This includes the transfer of approximately $2.4 million to Relief Defendants, even though none of the Relief Defendants provided legitimate services to the Black Pools or Pool Participants for the money they received. (ECF No. 9 at 4; *see also* ECF No. 27 at 2.) Such acts constitute misappropriation in violation of the antifraud provisions of the Act and Regulations. *CFTC v. Weinberg (Weinberg)*, 287 F. Supp. 2d 1100, 1106 (C.D. Cal. 2003) ("Misappropriation or diversion of funds entrusted to one for trading purposes is 'willful and blatant fraudulent activity' that clearly violates the Act.").

In sum, the Court finds CFTC has made a *prima facie* case that Defendants made fraudulent representations and omissions to prospective and existing Pool Participants and

///

misappropriated pool funds in violation of the antifraud provisions of the Act and Regulations, specifically, §§ 4b(a)(2)(A)–(C), 4c(b), and 4o(1)(A)–(B) of the Act, and Regulation 5.2(b).

### iii. Failure to Register as CPOs and APs

Sections 2(c)(2)(C)(iii)(I)(cc) and 4k(2) (7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2) (2018)) and corresponding Regulation 5.3(a)(2) (17 C.F.R. § 5.3(a)(2) (2019)) make it unlawful for an entity or person to act as a CPO or AP of a CPO, that is, to operate or solicit funds for a commodity pool or supervise persons engaged in such solicitation, without registering with CFTC.  *See, e.g.*, *Am. Bullion*, 2014 WL 12603558, at *7 (finding defendants who should have registered but failed to register as CPOs and APs violated the Act and Regulations).  Similarly, section 4m(1) of the Act (7 U.S.C. § 6m(1) (2018)) provides that it is unlawful for a CPO, unless registered, to make use of the mail or any means or instrumentality of interstate commerce in connection with his business as a CPO.

In demonstrating Defendants' fraudulent commodities-related activities, CFTC has presented evidence that Defendants acted as CPOs and APs of the CPOs, and moreover, that Defendants never registered with CFTC.  (ECF No. 3-11 at 11; *see also* ECF No. 9 at 3, 19.)  This evidence includes copies of emails Defendants sent to Pool Participants (*see, e.g.*, ECF No. 3-8 at 17–66; ECF No. 3-9 at 13–113) as well as other documentation showing Defendants solicited investments via teleconference seminars, telephone calls, mailings, and websites, thus engaging in interstate commerce in connection with their business as APs and CPOs.  (*See* ECF No. 9 at 13.)  This conduct violates §§ 2(c)(2)(C)(iii)(I)(cc), 4k(2), and 4m(1) of the Act, and Regulation 5.3(a)(2).  For this reason as well, CFTC has made a *prima facie* case of Defendants' violations of the Act and Regulations.

### iv. Violations of Regulations 4.20, 4.21, and 4.22

Under Regulation 4.20(a)–(c) (17 C.F.R. 4.20(a)–(c) (2019)), (1) a CPO must operate its pool as a separate legal entity, (2) all funds received by the CPO from a pool participant must be accepted in the name of the pool, not the CPO, and (3) commodity pool funds may not be commingled with the funds of the CPO or any other person.  The evidence submitted by CFTC demonstrates Defendants violated all three of these regulations.  As detailed in the SRO, pool

1  funds were wired directly from Pool Participants to the Glenn Law Firm attorney trust bank
2  accounts, rather than to accounts in the names of the Black Pools. (ECF No. 9 at 3–4.) The pool
3  funds were then transferred to accounts controlled by Black, Mancuso, Tufo and others which
4  contained non-pool property, thus comingling the funds. (*See id.* at 3–6; ECF No. 3-11 at 13–14.)
5  By this conduct, Defendants violated Regulation 4.20. *See Capitol Equity*, 2017 WL 9565340, at
6  *5.

7  Additionally, Regulations 4.21 and 4.22 (17 C.F.R. §§ 4.21, 4.22 (2019)) require CPOs to
8  provide pool participants and prospective pool participants certain disclosures and other
9  documents, in accordance with Regulations 4.24 and 4.25. *See* 17 C.F.R. § 4.21(b) (CPO may
10 not accept or receive funds from a prospective participant until first receiving a written receipt
11 that the prospective participant has received a Disclosure Document); 17 C.F.R. § 4.22 (CPO
12 must provide periodic Account Statements and Annual Reports "in accordance with generally
13 accepted accounting principles"); 17 C.F.R. § 4.24 (outlines 23 types of general disclosures
14 required for pools); 17 C.F.R. § 4.25 (details performance disclosures required for pools at
15 different points in time of the pool's operating history). CFTC submitted evidence demonstrating
16 Pool Participants never received these required documents. (*See, e.g.,* ECF No. 3-7 at 1–25; ECF
17 No. 3-8 at 1–3, 11–15 (declarations and exhibits reflecting receipt of initial agreement and no
18 disclosures).) Further, to the extent Defendants provided some Pool Participants account
19 statements, CFTC has submitted evidence indicating such statements were fraudulent and
20 therefore not created "in accordance with generally accepted accounting principles." (*See id.*;
21 ECF No. 9 at 6, 13.) As a result, the Court finds CFTC has submitted evidence sufficient to make
22 a *prima facie* case that Defendants violated Regulations 4.21 and 4.22.

23 For the foregoing reasons, the Court finds the unopposed record filed in support of
24 CFTC's Motion makes a *prima facie* case that Defendants committed fraud and misappropriated
25 funds, failed to properly register with CFTC as CPOs and APs, comingled funds, and failed to
26 provide clients with specific disclosures and other required documents, all in violation of the Act
27 and Regulations. CFTC has therefore made a *prima facie* showing that a violation of the law has
28 / / /

occurred, and preliminary injunctive relief is appropriate. *Driver*, 877 F. Supp. 2d at 981; *Hunt*, 591 F.2d at 1220; *Fed. Election Comm'n*, 869 F.2d at 1261.

### C.   Reasonable Likelihood of Future Violations

Determining the likelihood of future violations may involve consideration of past unlawful conduct. *CFTC v. Co Petro Mktg. Grp., Inc. (Co Petro)*, 502 F. Supp. 806, 818 (C.D. Cal. 1980), *aff'd*, 680 F.2d 573 (9th Cir. 1982); *Hunt*, 591 F.2d at 1220. In drawing such an inference from past violations, a court should look at the totality of the circumstances, including the egregiousness of the defendant's actions, whether the violations were isolated or recurrent, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of his conduct's wrongfulness, and whether the circumstances indicate the defendant is in a position that makes future violations likely to occur. *Driver*, 877 F. Supp. 2d at 981–82; *Co Petro*, 502 F. Supp. at 818; *Hunt*, 591 F.2d at 1220; *British Am.*, 560 F.2d at 142; *S.E.C. v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980); *see also CFTC v. S. Trust Metals, Inc.*, 894 F.3d 1313, 1328 (11th Cir. 2018) ("A court need not make a finding on every factor."). In addition, "[w]hen the violation has been predicated upon systematic wrongdoing, rather than an isolated occurrence, a court should be more willing to enjoin future conduct." *Driver*, 877 F. Supp. 2d at 981; *Hunt*, 591 F.2d at 1220; *see also British Am.*, 560 F.2d at 142 (because commodities trading is highly regulated and sensitive area of public trust, "any circumstances that indicate the defendant might repeat or continue his activity in violation of the registration requirements strongly favor entry of an injunction.")

As detailed in the SRO and noted herein, Defendants' misconduct was neither isolated nor accidental. To the contrary, the evidence indicates Defendants engaged in highly egregious and systematic violations of the Act and Regulations by fraudulently soliciting and misappropriating over $14.32 million in investment funds from at least 91 Pool Participants over the past five years. (*See* ECF No. 9 at 3, 5–6, 18.) To date, that evidence remains unrebutted. Moreover, rather than admit any wrongdoing, Defendants took pains to conceal their fraud, including by issuing monthly statements reflecting profits that never occurred, making Ponzi payments to certain Pool Participants, falsely assuring Pool Participants in order to lull them and solicit

additional payments, and evading CFTC's review by never registering with CFTC to do business as APs and CPOs. (*See id.* at 6–7, 9, 18–19; ECF No. 3-11 at 11.) These actions both detract from the sincerity of any assurances against future wrongdoing Defendants may express (which they have not), and support the finding that Defendants are in a position that makes future violations likely to occur. Indeed, the record filed in support of CFTC's Motion for Preliminary Injunction reveals a strong likelihood of future wrongdoing absent injunctive relief, where Defendants continue to solicit investments in blatant disregard of the California DBO's desist and refrain order (*see* ECF No. 9 at 15–16), have made no attempt to dispute the conduct alleged against them by CFTC in this action, and may currently be refusing to comply with this Court's SRO directive to provide CFTC access to Records (*see* ECF Nos. 24, 29 (CFTC's contempt motions against Black, Financial Tree, Financial Solution, New Money, and Mancuso)).

In consideration of the foregoing and based on the entire record in this case, which Defendants and Relief Defendants have not opposed, the Court finds there is good cause to believe that Defendants have engaged in and/or are engaging in violations of Sections 4b(a)(2)(A)–(C), 4c(b), 4k(2), 4m(1), 4o(1)(A)–(B), and 2(c)(2)(C)(iii)(I)(cc) of the Act (7 U.S.C. §§ 6b(a)(2)(A)–(C), 6c(b), 6k(2), 6m(1), 6o(1)(A)–(B), and 2(c)(2)(C)(iii)(I)(cc) (2018)), and Regulations 4.20(a)(1), (b)–(c), 4.21, 4.22, 5.2(b)(1)–(3), 5.3(a)(2), and 32.4 (17 C.F.R. §§ 4.20(a)(1), (b)–(c), 4.21, 4.22, 5.2(b)(1)–(3), 5.3(a)(2), and 32.4 (2019)). CFTC has also shown there is a reasonable likelihood that Defendants will continue to violate the Act and Regulations unless they are restrained and enjoined from further violations. Furthermore, CFTC has shown Relief Defendants have been unjustifiably enriched by Defendants' violative conduct and will continue to improperly receive Assets from Defendants absent injunctive relief. Therefore, the issuance of the preliminary relief requested by CFTC is justified.

### D. Requested Relief

It has long been recognized that, "in an action brought to enforce the requirements of remedial statutes such as this Act, a district court has broad discretion to fashion appropriate relief." *Muller*, 570 F.2d at 1300. Indeed, "[t]he district court has inherent power as a court of equity to order such temporary, ancillary relief in order to preserve the status quo so that an

ultimate decision for the [CFTC] could be effective." *Id.* (citing *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1105–06 (2d Cir. 1972)).

Such ancillary relief may include an order to freeze the assets of a defendant, prohibit the destruction of records, or prohibit a defendant from preventing CFTC access to the defendant's records. *See Noble Metals*, 67 F.3d at 774–75; *CFTC v. White Pine Trust Corp. (White Pine)*, 547 F.3d 1219, 1221 (9th Cir. 2009); *Yu*, 2012 WL 3283430, at *6–7; *CFTC v. Saffron (Saffron)*, No. 2:19-cv-01697-JAD-DJA, 2019 WL 7597040, at *2–4 (D. Nev. Dec. 6, 2019); *see also CFTC v. Morgan, Harris & Scott, Ltd.*, 484 F. Supp. 669, 678 (S.D.N.Y. 1979) (order freezing assets "is often necessary to ensure that the assets will be available to compensate public customers"); *Muller*, 570 F.2d at 1298 (affirming district court's issuance of preliminary injunction).

Similarly, a district court may order defendants to provide an accounting of their assets and financial records to enable CFTC to fulfill its statutory duties. *Saffron*, 2019 WL 7597040, at *3; *see also CFTC v. Fin. Robotics, Inc.*, No. CIV.A. H-11-2446, 2013 WL 3280038, at *1 (S.D. Tex. June 27, 2013) (on SRO); *Weinberg*, 287 F. Supp. 2d at 1108 (on permanent injunction). And, where there is a reasonable likelihood that defendants will continue to violate the Act and Regulations unless they are restrained and enjoined from future violations, a preliminary injunction that prohibits the defendants from future acts is appropriate. *Hunt*, 591 F.2d at 1220; *British Am.*, 560 F.2d at 142; *Saffron*, 2019 WL 7597040, at *1–2; *Yu*, 2012 WL 3283430, at *6–7; *see also Driver*, 877 F. Supp. 2d at 981–82 (on permanent injunction); *Rosenberg*, 85 F. Supp. 2d at 543–54 (same); *CFTC v. Leben*, No. 3:14-cv-866-TLW, 2016 WL 7354359, at *7–8 (D.S.C. Aug. 5, 2016) (same).

Here, CFTC requests entry of a preliminary injunction order to continue the SRO's Asset freeze, prohibition of destruction of Records, and requirement that Defendants and Relief Defendants provide immediate access of their Records to CFTC. (*See* ECF Nos. 26–27.) CFTC additionally requests the preliminary injunction prohibit Defendants from committing future violations of the Act and Regulations, and from engaging in commodity-related activities. (*Id.*) Finally, CFTC seeks an order requiring Defendants and Relief Defendants to produce a complete

accounting detailing all controlled financial institution accounts and Assets, with supporting documents, from January 1, 2015, to the present. (*Id.*)

The Court is satisfied that such relief is appropriate here. Defendants' solicitation of at least $14.32 million from members of the public, nearly 77% of which has been misappropriated by Defendants for personal expenses and Ponzi payments, and the reasonable likelihood that Defendants will transfer or dissipate Assets or destroy or alter Records in the absence of a preliminary injunction clearly supports a continuation of the SRO's Asset freeze, prohibition of destruction of Records, and requirement to immediately make Records available to CFTC. *See Noble Metals*, 67 F.3d at 774–75; *White Pine*, 547 F.3d at 1221. Defendants' apparent failure to comply with this Court's SRO (*see* ECF Nos. 24, 29) further supports the finding that an accounting as well as the continuation of the order to immediately make Records available to CFTC is necessary to effectuate the statutory purpose and policy of the Act. *See Saffron*, 2019 WL 7597040, at *3. Finally, the reasonable likelihood that Defendants will continue to violate the Act and Regulations absent injunctive relief — as demonstrated by Defendants' continued solicitation of new investments even in the face of prior SEC convictions, State Bar complaints, and a state agency's order to cease and desist such activities (*see* ECF No. 9 at 19) — makes clear that a preliminary injunction prohibiting all future commodity-related activities, and violations resulting therefrom, is necessary to protect members of the public from further loss and damage. *Hunt*, 591 F.2d at 1220; *British Am.*, 560 F.2d at 142; *Saffron*, 2019 WL 7597040, at *1–2; *Yu*, 2012 WL 3283430, at *6–7.

Accordingly, the Court finds good cause exists to GRANT the requested preliminary injunction in this case to preserve the status quo; prevent the withdrawal, transfer, removal, dissipation, or disposal of Assets; prevent the destruction, alteration, or disposal of Records; protect Defendants' clients, as well as the trading public at large, from further loss and damage; remove the danger of further violations of the Act and the Regulations; and enable CFTC to fulfill its statutory duties.

/ / /

/ / /

**IV.     CONCLUSION**

For the foregoing reasons, CFTC's Motion for Preliminary Injunction (ECF No. 3) is hereby GRANTED, as follows:

      A.     <u>Prohibitions on Violating the Act and Regulations, and on Engaging in Commodity-Related Activities</u>

Defendants and their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with them, including any successors thereof, who receive actual notice of this Order by personal service or otherwise, are hereby RESTRAINED AND ENJOINED from directly or indirectly violating 7 U.S.C. §§ 6b(a)(2)(A)–(C), 6c(b), 6k(2), 6m(1), 6o(1)(A)–(B), and 2(c)(2)(C)(iii)(I)(cc) (2018), and 17 C.F.R. §§ 4.20(a)(1), (b)–(c), 4.21, 4.22, 5.2(b)(1)–(3), 5.3(a)(2), and 32.4 (2019).

Furthermore, Defendants and their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with them, including any successors thereof, who receive actual notice of this Order by personal service or otherwise, are hereby RESTRAINED AND ENJOINED from directly or indirectly:

1. Trading on or subject to the rules of any registered entity (as that term is defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018));

2. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2019)), for accounts held in the name of any Defendant or for accounts in which any Defendant has a direct or indirect interest;

3. Having any commodity interests traded on any Defendant's behalf;

4. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity interests;

6. Applying for registration or claiming exemption from registration with CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with CFTC except as provided for in Regulation 4.14(a)(9) (17 C.F.R. § 4.14(a)(9) (2019)); and

17

1    7. Acting as a "Principal" (as that term is defined in Regulation 3.1(a) (17 C.F.R. § 3.1(a)

2  (2019))), agent, or any other officer or employee of any "Person" (as that term is defined in

3  Section 1a(38) of the Act (7 U.S.C. § 1a(38) (2018))), that is registered, exempted from

4  registration, or required to be registered with CFTC, except as provided for in 17 C.F.R. §

5  4.14(a)(9).

B.   <u>Continuation of Asset Freeze and Prohibition on the Withdrawal, Transfer, Removal, Dissipation, and Disposal of Assets</u>

Unless modified by further order of this Court, Defendants and Relief Defendants continue to be RESTRAINED AND ENJOINED from directly or indirectly withdrawing, transferring, removing, dissipating, or otherwise disposing of any Assets, wherever located, including Defendants' and Relief Defendants' Assets held outside the United States.  The Assets affected by this Order shall include existing Assets, Assets acquired after the effective date of this Order, and Assets derived from or otherwise related to the activities alleged in the Complaint, regardless of when the Asset is obtained.

C.   <u>Continuation of Maintenance of and Access to All Records Relating to Business Activities, Business, and Personal Finances</u>

The prohibition in Section IV(B) of the SRO on Defendants' and Relief Defendants' destruction, alteration, or disposing of, in any manner, any Records that relate to or refer to the business activities or business or personal finances of any Defendant or Relief Defendant shall continue in full force and effect.  (ECF No. 9 at 21.)

All requirements in Section IV(B) of the SRO requiring Defendants and Relief Defendants to immediately allow representatives of CFTC to inspect any Records relating or referring to the business activities or business or personal finances of Defendants and Relief Defendants shall continue in full force and effect.  (ECF No. 9 at 21–24.)

D.   <u>Notice to Financial Institutions and Others that Hold or Control Assets or Records</u>

Unless modified by further order of this Court, the prohibitions and requirements in Section IV(C) of the SRO, including the prohibitions on financial and brokerage institutions

permitting the withdrawal, transfer, removal, dissipation, or other disposition of any of Defendants' or Relief Defendants' Assets, and the requirement that such institutions permit the CFTC's inspection of relevant Records, shall continue in full force and effect.  (ECF No. 9 at 24–25.)

Furthermore, any financial or brokerage institution, business entity, or person that holds, controls, or maintains custody of any account or Asset titled in the name of, held for the benefit of, or otherwise under the control of any Defendant or Relief Defendant, or which has held, controlled, or maintained custody of any such account or Asset of Defendants or Relief Defendants at any time since **June 15, 2015**, who receives notice of this Order by personal service or otherwise, is hereby notified that this Order prohibits Defendants and Relief Defendants from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of Defendants' or Relief Defendants' Assets, except as directed by further order of the Court; provided, however, nothing in this Order shall limit the discretion of any compliance official of any retail foreign exchange dealer or futures commission merchant with which Defendants or Relief Defendants maintain an account to liquidate, or close out, any and all open positions in Defendants' or Relief Defendants' accounts, in a prompt and orderly fashion in order to avoid losses due to the terms of the SRO continued in effect by this Order.

        E.    <u>Accounting</u>

Within thirty (30) days of the entry of this Order, each Defendant and Relief Defendant shall file with the Court and serve upon CFTC a sworn statement and accounting, with complete documentation, covering the period from **January 1, 2015 to the present**:

    1. Identifying every account at every bank, brokerage, or other financial institution: (a) over which the Defendant or Relief Defendant has signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Defendant or Relief Defendant;

    2. Identifying all credit, bank, charge, debit or other deferred payment cards issued to or used by each Defendant or Relief Defendant, including but not limited to: the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with

authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

      3. Of all Assets received by any Defendant or Relief Defendant from any person or entity, including the value, location, and disposition of any Assets so received; and

      4. Of all funds received by Defendants and Relief Defendants, and each of them, in any way related, directly or indirectly, to the conduct alleged in CFTC's Complaint (ECF No. 1). The submission must clearly identify, among other things, all Pool Participants, the dates and amounts of their contributions, and the current location of such funds.

      F.    <u>Waiver of Bond Requirement</u>

As an agency of the United States of America and pursuant to 7 U.S.C. § 13a-1(b) (2018) and Federal Rule of Civil Procedure 65(c), CFTC is not required to post a security bond in this matter.

      G.    <u>Force and Effect</u>

This Preliminary Injunction shall remain in full force and effect pending trial, final disposition of this action, or further order of this Court, and the Court retains jurisdiction of this matter for all purposes. Any party may petition the Court upon proper notice to amend or lift the Preliminary Injunction.

IT IS SO ORDERED.

DATED: July 28, 2020

                                  Troy L. Nunley  
                                  United States District Judge