UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> FINANCIAL TREE dba FINANCIAL TREE TRUST; FINANCIAL SOLUTION GROUP dba FINANCIAL SOLUTION GROUP TRUST; NEW MONEY ADVISORS, LLC; THE LAW FIRM OF JOHN GLENN, P.C.; JOHN D. BLACK aka JOHN BARNES; CHRISTOPHER MANCUSO; JOSEPH TUFO; and JOHN P. GLENN, <br><br> Defendants; <br><br> SUISSE GROUP (USA) LLC; JMC INDUSTRIES LLC; LANDES CAPITAL MANAGEMENT, LLC; KINGDOM TRUST LLC; HERBERT CASWELL; ANNE MANCUSO; and TYLER MANCUSO <br><br> Relief Defendants. | No. 2:20-cv-01184-TLN-AC <br><br><br> **ORDER** |

This matter is before the Court on Defendants John P. Glenn ("Glenn") and The Law Firm of John Glenn, P.C.'s (collectively, the "Glenn Defendants") Motion to Temporarily Stay Answer Deadline and Party Discovery. (ECF No. 99.) Plaintiff Commodity Futures Trading Commission

("CFTC") filed a Response in opposition to the Motion.  (ECF No. 101.)  The Glenn Defendants filed a Reply.  (ECF No. 102.)  For the reasons stated herein, the Glenn Defendants' Motion is DENIED.  (ECF No. 99.)

### I. FACTUAL AND PROCEDURAL BACKGROUND

The parties are familiar with the facts of this case, and only those relevant to the issues currently before the Court will be re-iterated here.  On June 15, 2020, CFTC filed a Complaint against Defendants John D. Black ("Black"), Financial Tree, Financial Solution Group, New Money Advisors, LLC, Christopher Mancuso ("Mancuso"), Joseph Tufo ("Tufo"), and the Glenn Defendants (collectively, "Defendants"), and Relief Defendants Suisse Group (USA) LLC ("Suisse Group"), JMC Industries LLC ("JMC"), Landes Capital Management, LLC ("Landes"), Kingdom Trust LLC ("Kingdom"), Herbert Caswell ("Caswell"), Anne Mancuso ("Anne"), and Tyler Mancuso ("Tyler").  (ECF No. 1.)  The Complaint alleges Defendants violated multiple provisions of the Commodity Exchange Act ("Act") and Commission Regulations ("Regulations") by engaging in a Ponzi scheme whereby they fraudulently solicited customers to invest in foreign currency future trades, did not actually use the money to trade on investors' behalf, and paid the old investors "returns" from funds they obtained from later, fraudulently-solicited investors.  (*Id.*)  CFTC maintains Defendants have defrauded their investors of approximately $14.32 million.  (*Id.*)

On the same date that it filed its Complaint, CFTC also filed an *ex parte* Motion for a Statutory Restraining Order ("SRO"), which the Court granted on July 2, 2020.  (ECF Nos. 3, 9.)  The SRO froze assets, prohibited the destruction of records, required CFTC be provided immediate access to those records, and ordered Defendants and Relief Defendants to show cause as to why an Order for Preliminary Injunction ("PI") should not be granted.  (ECF No. 9 at 26.)  No Defendant or Relief Defendant responded to the Court's Order to Show Cause and the Court granted CFTC's Motion for PI on July 28, 2020.  (ECF No. 33.)  In addition to continuing the terms of the TRO, the PI additionally required a complete accounting from Defendants and Relief Defendants and prohibited Defendants from committing future violations of the Act and Regulations or engaging in commodity-related activities.  (*Id.*)

2

Meanwhile, on July 22, 2020, the California State Attorney General's Office ("AG") filed a felony criminal complaint in Sacramento County Superior Court, Case No. 20FE011219, that parallels the claims asserted in the instant action. (ECF No. 68-2 at 1–2; ECF No. 68-3; ECF No. 70 at 2; ECF No. 70-1 at 2; *see also* ECF No. 70-2; ECF No. 99-2 at 2, 4–15.) The AG brought criminal charges against Black, Mancuso, and Tufo, but declined to charge Glenn at that time. (ECF No. 68-1 at 2–3; ECF No. 68-2 at 1–2; ECF No. 68-3; ECF No. 99-2 at 2, 4–15.) However, the AG communicated to Glenn's criminal counsel that, while it had not made a charging decision with respect to Glenn, Glenn remained a target of a state criminal investigation. (ECF No. 68-1 at 3; ECF No. 68-2 at 2; ECF No. 99-2 at 2.) Agents of the Federal Bureau of Investigation ("FBI") also interviewed Glenn in July 2020 regarding the events that are the subject of the AG's investigation, as well as an apparent Florida-centered investigation that does not appear to be related to the instant matter. (*See* ECF No. 99-2 at 2.)

In October 2020, the AG communicated to Glenn's criminal counsel that, while the investigation remained "ongoing," it did not intend to charge Glenn. (ECF No. 99-2 at 2–3.) To date, the AG has not criminally charged Glenn.

As of the filing date of this Order, default has been entered against Mancuso, the Black Entities, Tufo, Kingdom, Landes, Anne, Tyler, Caswell, JMC, and Suisse Group for their failure to timely respond to the Complaint.[1] (ECF Nos. 49, 50, 58.)

On September 8, 2020, the Glenn Defendants filed a Motion seeking a temporary stay of the deadline to respond to the Complaint and party discovery. (ECF No. 68.) CFTC filed a Response in which it provided a stipulation of proposed terms for the stay. (ECF No. 70.) On October 27, 2020, the Court granted the Glenn Defendants' Motion, staying the deadline to answer the Complaint and party discovery for 90 days with respect to the Glenn Defendants. (*See* ECF No. 96 at 11–13.)

///

---

[1] The Clerk additionally entered default against Black on August 5, 2020. (ECF No. 50.) However, Black subsequently moved for an order setting aside the default, which the Court granted. (ECF Nos. 77, 96.)

3

Seeking to continue the stay on litigation, the Glenn Defendants filed their second Motion to temporarily stay their deadline to file an answer and respond to party discovery on December 16, 2020. (ECF No. 99.) The instant Motion again seeks a stay for a period of 90 days. (*Id.*) On January 6, 2021, Glenn filed for bankruptcy. (*See* ECF No. 100.) CFTC opposes the Glenn Defendants' Motion and the Glenn Defendants have filed a Reply. (ECF Nos. 101, 102.) On January 28, 2021, the Court deemed the matter submitted on the pleadings. (ECF No. 103.)

## II.     STANDARD OF LAW

A district court has the inherent power to stay its proceedings. This power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *see also Federal Sav. & Loan Ins. Corp. v. Molinaro (Molinaro)*, 889 F.2d 899, 902 (9th Cir. 1989) ("A court may decide to stay the civil case when required by the interests of justice."); *Little v. Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling discovery.").

"The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (quoting *Molinaro,* 889 F.2d at 902); *SEC v. Dresser Indus. (Dresser),* 628 F.2d 1368, 1375 (D.C. Cir.), *cert. denied,* 449 U.S. 993 (1980). "Nevertheless, a court may decide in its discretion to stay civil proceedings … 'when the interests of justice seem[] to require such action.'" *Keating*, 45 F.3d at 324 (quoting *United States v. Kordel,* 397 U.S. 1, 12 n.27 (1970)); *compare Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*, 781 F. App'x 666, 666 (9th Cir. 2019) (fairest and most efficient course of litigation may be to enter a stay of an action pending resolution of independent proceedings which bear upon the case) *with Bank of Montreal v. Salyer*, 599 F. App'x 706, 707 (9th Cir. 2015) (finding stay not warranted "[i]n the absence of substantial prejudice to the rights of the parties involved").

The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made "in light of the particular circumstances and competing interests involved in the case." *Keating*, 45 F.3d at 324 (quoting *Molinaro,* 889 F.2d at 902). Specifically,

1    the Court should consider "the extent to which the defendant's fifth amendment rights are

2    implicated." *Id.*; *Cont'l Ins. Co. v. Cota*, Nos. 08-2052 SC, 07-5800 SC, 07-6045 SC, 07-5926

3    SC, 08-2268 SC, 2008 WL 4298372, at *2 (N.D. Cal. Sept. 19, 2008) (deeming the assessment of

4    a defendant's Fifth Amendment rights to be the "first consideration" in evaluation of a stay

5    request). In addition, the district court must balance the interests of the parties, the public, and the

6    court through consideration of the following factors: (1) the interest of the plaintiff in proceeding

7    expeditiously with the litigation or any particular aspect of it, and the potential prejudice to the

8    plaintiff of a delay; (2) the burden which any particular aspect of the proceedings may impose on

9    the defendants; (3) the convenience of the court in the management of its cases, and the efficient

10   use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the

11   interest of the public in the pending civil and criminal litigation. *Keating*, 45 F.3d at 324–25.

**III.   ANALYSIS**

The Court finds the above factors do not support granting the requested temporary stay.

A.   Fifth Amendment Interests

Even though Glenn has not been indicted in any criminal matter, the primary reason the Glenn Defendants seek a stay is that Glenn remains under investigation and may still be charged criminally by the AG and the FBI. (ECF No. 99-1 at 5 (citing *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1038 (W.D. Mich. 2007)); ECF No. 99-3 at 3.) The Glenn Defendants argue that, absent a stay, "Glenn will be forced into an untenable election between (1) invoking his constitutional right against self-incrimination while inviting civil prejudice against himself and his law firm, or (2) suffering the criminal consequences of waiving his Fifth Amendment rights." (*Id.*) In opposition, CFTC argues that no new action has been taken against Glenn in the parallel criminal case since July 2020, the AG has communicated it does not intend to charge Glenn, and courts have frequently denied requests for a stay when the likelihood of indictment was even less tenuous than it is here. (ECF No. 101 at 6–8.) The Glenn Defendants do not distinguish the authorities cited by CFTC in their reply but maintain that Glenn remaining the subject of ongoing investigations by the AG and FBI is sufficient to warrant a stay of proceedings. (ECF No. 102.) CFTC has the better argument.

"[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Dresser*, 628 F.2d at 1375–76; *cf. Cont'l Ins. Co.*, 2008 WL 4298372, at *2 (stay granted where defendant was already charged criminally). "The case for staying civil proceedings is 'a far weaker one when '[n]o indictment has been returned[, and] no Fifth Amendment privilege is threatened.'" *Molinaro*, 889 F.2d at 903 (recognizing that potential criminal indictments may make responding to civil charges more difficult, but court did not abuse its discretion in denying a stay). Indeed, where no indictment has been issued, stays are generally not granted absent some compelling basis. *See S.E.C. v. Global Express Capital Real Estate Inv. Fund, I, LLC*, 289 Fed. App'x 183, 191 (9th Cir. 2008); *Estate of Morad v. City of Long Beach*, No. CV 16-6785-MWF(AJWx), 2017 WL 5187826, at *8 (C.D. Cal. Apr. 28, 2017) ("*Keating* stays are rarely, if ever, granted where no indictment has yet been returned.")); *Dresser*, 628 F.2d at 1377 ("we should not block parallel investigations . . . in the absence of 'special circumstances'"); *compare Chao*, 498 F. Supp. 2d at 1038–39 (AUSA statements indicating indictment was but "an eventuality" deemed sufficiently compelling basis for stay) *with SEC v. Blockvest, LLC (Blockvest)*, No. 18-cv-2287-GPB (BLM), 2019 WL 1510912, at *3 (S.D. Cal. Apr. 5, 2019) (stay based on "ongoing criminal investigation by the DOJ and FBI" denied where no evidence indicated an indictment was imminent); *see also SEC v. Bankers Alliance Corp. (Bankers)*, 881 F. Supp. 673, 680 (DC Dist. 1995) (defendant invoking Fifth Amendment privilege may not "merely declare" that answering would incriminate himself, but "must show a real danger, and not a mere imaginary, remote or speculative possibility of prosecution based on the information withheld . . . [and must provide] credible reasons why revealing such information presents more than a frivolous fear of incrimination.") (internal quotes and citations omitted).

Here, the AG's October 2020 statement declining to prosecute Glenn represents a sharp departure from its July 23, 2020 comment that it had not made a charging decision yet with respect to Glenn, but that investigation and a charging decision was ongoing. (*See* ECF No. 99-2 at 2–3.) It is additionally telling that, while the AG immediately brought criminal charges against

1  Black and Tufo in July 2020, it continues to decline to charge Glenn based on the same evidence
2  plus any additional information obtained during the past seven months of its ongoing
3  investigation. (*See id.* at 2–15.) Viewing all of the AG's statements in context, the AG's mere
4  refusal to definitively state it will *never* charge Glenn does not provide a sufficiently compelling
5  basis to grant the requested stay in the absence of any indictment. *See S.E.C. v. Sandifur*, No.
6  C05-1631C, 2006 WL 1719920, at *2 (W.D. Wash. Jun. 19, 2006) ("The mere fact that the
7  government refused to confirm in its response papers that no indictment shall issue does not
8  operate as proof that an indictment *will* issue.") (emphasis in original).

9  The Glenn Defendants' argument that an FBI investigation is ongoing is similarly
10 unavailing. The only facts submitted by the Glenn Defendants with respect to the FBI
11 investigation are as follows: (1) Glenn was interviewed by the FBI in July 2020 regarding facts
12 pertaining to the instant matter and another seemingly unrelated matter; and (2) a local
13 newspaper, the Sacramento Bee, published a story about the parallel criminal case titled "Feds
14 Say Investment Business Run by Folsom Advisor was $14.5 million Ponzi Scheme." (*See* ECF
15 No. 99-2 at 2; ECF No. 102-1 at 2.) However, to date, the FBI has not criminally charged Glenn
16 and no other evidence has been submitted to support the contention that FBI charges are
17 imminent. *See Blockvest*, 2019 WL 1510912, at *3. Additionally, the terms of the prior
18 stipulation to stay reflect the parties only contemplated the need to stay litigation due to the AG's
19 investigation and not any FBI investigation. (*See* ECF No. 96 at 12.) Finally, the Court finds the
20 Glenn Defendants' blanket request to stay all discovery is unwarranted where they have not
21 demonstrated an inability to respond to *any* discovery with information that does not tend to
22 incriminate Glenn, that the burden on Glenn's Fifth Amendment privilege has not been rendered
23 negligible in light of the declarations and records the Glenn Defendants have already provided
24 CFTC, or that Glenn's privilege cannot be protected through less-severe alternatives, such as
25 protective orders or stipulated conditions to discovery. *See Molinaro*, 889 F.2d at 903; *Blockvest*,
26 2019 WL 1510912, at *3; *Dresser*, 628 F.2d at 1375; *see also Bankers*, 881 F. Supp. at 680. For
27 all of these reasons, the Court finds consideration of Glenn's Fifth Amendment rights
28 ///

1  does not weigh in favor of granting the requested stay. *Keating*, 45 F.3d at 324; *Molinaro*, 889
2  F.2d at 903.

3          B.      *Keating* Factors

4          As to the first *Keating* factor, the Glenn Defendants argue there is no harm or prejudice to
5  CFTC because a stay of 90 days — especially compared to a stay pending the entire criminal
6  case[2] — is negligible, the Glenn Defendants have already provided all pertinent information to
7  CFTC, CFTC's purported goal of "sending a strong message" has already been met through the
8  publicity garnered by the initial filing and unsealing of the Complaint, and the stay will permit the
9  AG time to determine whether to prosecute Glenn so that CFTC may ultimately proceed with this
10 case as a whole. (ECF No. 99-1 at 6; ECF No. 102 at 4–5.)  In response, CFTC claims it has a
11 strong interest in resolving the case — not just litigating some aspects of it — in order to protect
12 the public through permanent injunctive relief and vindicate harmed victims. (ECF No. 101 at
13 10.)  The Court agrees CFTC "has a strong interest in proceeding expeditiously to protect
14 investors and remedy violations of the [Act and Regulations]." *See Chen*, 2016 WL 7444922, at
15 *2; *Dresser*, 628 F.2d at 1377.  Further, a delay in proceedings prejudices CFTC because
16 witnesses may die or move away, memories may fade, evidence may be lost or become stale, or
17 enforcement resources may be diverted. *Dresser*, 628 F.2d at 1377; *Blue Cross & Blue Shield of*
18 *Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007). Therefore, the
19 Court finds the first *Keating* factor weighs in favor of denying the stay. *Keating*, 45 F.3d at 324–
20 25.

21         As to the second *Keating* factor, the burden on the Glenn Defendants is minimal. The
22 Glenn Defendants have indicated the primary reason they seek a stay is that Glenn remains under
23 investigation and may still be charged by the AG and the FBI. (ECF No. 99-1 at 5.)  The same
24 considerations regarding Glenn's Fifth Amendment concerns previously discussed also support a
25 finding that the second factor weighs in favor of denying the stay. *Keating*, 45 F.3d at 324–25.

---

[2] The Glenn Defendants are referring to Defendant Black's motion to stay all litigation pending resolution of the parallel criminal proceedings. (ECF No. 104.)  Black's motion is neither fully briefed nor currently pending before the Court and will therefore be addressed in a separate order.

With respect to the third factor, the Glenn Defendants argue a mere 90-day stay is not unduly burdensome to the Court. (ECF No. 99-1 at 6–7.) Rather, the stay will make efficient use of judicial resources by insuring that common issues of fact will be resolved in the criminal and bankruptcy proceedings "and avoid needlessly plowing ahead in this action in the interim." (*Id.* (citing *Taylor, Bean & Whitaker Mortg. Corp v. Triduanum Fin., Inc.*, 2009 WL 2136986, at *10 (E.D. Cal. Jul. 15, 2009)).) Yet, as CFTC correctly notes, there is no efficiency to be gained by leveraging the criminal forum to "resolve common questions of fact" where Glenn has not been indicted. (*See* ECF No. 101 at 10–11.) Indeed, "there is no way to reliably ascertain when, if ever, an indictment will be returned against [Glenn], meaning that a stay would effectively thrust the Court into an indefinite state of limbo." *See Chen*, 2016 WL 7444922, at *2. Further, a stay would have the opposite effect with respect to the bankruptcy action, as it could require CFTC to separately litigate Glenn's liability in the bankruptcy proceeding instead of leveraging the preclusive effect of the judgment CFTC seeks from this Court. (*See id.* at 9.) Additionally, the Court has an interest in clearing its docket. *Molinaro*, 889 F.2d at 903. For these reasons, the third factor weighs in favor of denying the stay. *Keating*, 45 F.3d at 324–25.

Finally, the Court finds the requested stay is prejudicial to non-parties and the public. The Glenn Defendants argue the requested stay will not impact others because the public is not in jeopardy of losing access to restitution where Glenn's assets have all been frozen pursuant to the PI. Further, the Glenn Defendants argue that a stay will "ensure that the criminal process is not subverted by ongoing civil cases." (ECF No. 99-1 at 7 (citing *Douglas v. United States*, 2006 U.S. Dist. LEXIS 52754, *18–19 (N.D. Cal. Jul. 17, 2006).) The Court finds these arguments unavailing. The criminal process cannot be subverted where Glenn has not been indicted. Further, the alleged victims of Defendants' Ponzi scheme — many of whom purportedly lost their life savings and went bankrupt after investing their money through Glenn — would be prejudiced by further unnecessary delay. (ECF No. 101 at 8–9); *see Chen*, 2016 WL 7444922, at *3 ("investors and the general public will benefit if the SEC enforcement action proceeds through discovery to recover funds allegedly acquired through fraud."). Indeed, Glenn's recent bankruptcy filing (*see* ECF No. 100) bolsters CFTC's argument against a stay, as discovery and a

1   final judgment will greatly enhance CFTC's ability to timely demonstrate to the bankruptcy court
2   the existence and amount of debt owed as restitution to the victims in this action. (ECF No. 101
3   at 9.) For these reasons, the Court finds the fourth and fifth factors also weigh in favor of denying
4   the requested stay. *Keating*, 45 F.3d at 324–25.

5   Accordingly, the impact on Glenn's Fifth Amendment rights and the *Keating* factors
6   supports denying the requested stay.

### C. Bankruptcy Filing

8   Additionally, though they do not raise it as an independent argument, the Glenn
9   Defendants seem to imply that Glenn's recent filing for bankruptcy triggers an automatic stay of
10  this action under 11 U.S.C. § 362(a). (*See* ECF No. 99-1 at 7 ("Glenn intends to file for
11  bankruptcy protection in early January of 2021"); ECF No. 100 (notice of bankruptcy filing);
12  ECF 102 at 6 (noting Glenn has filed for "bankruptcy protection").) CFTC opposed this line of
13  reasoning in their Opposition, but the Glenn Defendants do not address the legal authority cited
14  by CFTC in their Reply. (*See* ECF No. 101 at 9–10 n.2; *see generally* ECF No. 102.) In short,
15  the Glenn Defendants' bankruptcy argument is unavailing.

16  Actions filed by governmental agencies in which they enforce their regulatory power, as
17  here, are exempt from the automatic stay provision that applies in some bankruptcy cases. *See* 11
18  U.S.C. § 362(b); *CFTC v. Co Petro Marketing Group, Inc.*, 700 F.2d 1279, 1283–84 (9th Cir.
19  1983) ("where a governmental unit is suing a debtor to prevent or stop violation of fraud . . . or
20  similar police or regulatory laws, or attempting to fix damages for violation of such a law, the
21  action or proceeding is not stayed under the automatic stay") (quoting legislative history of
22  Section 362); *see also CFTC v. Am. Bullion Exch. ABEX Corp.*, No. SACV 10-1876
23  DOC(RNBx), 2011 WL 13134933, *4 (C.D. Cal. Mar. 11, 2011) ("Section 362[(a)] is
24  inapplicable to CFTC; by its terms, the statute exempts enforcement actions from its reach.");
25  *CFTC v. FITC, Inc.*, 52 B.R. 935, 936 (N.D. Cal. 1985) ("It is unequivocally the law in the Ninth
26  Circuit that a filing of a . . . petition does not stay a continuing civil enforcement proceeding
27  brought by a government agency."). The Court therefore declines to issue a stay of the action on
28  the aforementioned basis.

### IV. CONCLUSION

For the foregoing reasons, the Glenn Defendants' Motion to Temporarily Stay Answer Deadline and Party Discovery is hereby DENIED. (ECF No. 99.)

IT IS SO ORDERED.

DATED: February 12, 2021

Troy L. Nunley
United States District Judge