UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>FINANCIAL TREE dba FINANCIAL TREE TRUST; FINANCIAL SOLUTION GROUP dba FINANCIAL SOLUTION GROUP TRUST; NEW MONEY ADVISORS, LLC; THE LAW FIRM OF JOHN GLENN, P.C.; JOHN D. BLACK aka JOHN BARNES; CHRISTOPHER MANCUSO; JOSEPH TUFO; and JOHN P. GLENN,<br><br>Defendants;<br><br>SUISSE GROUP (USA) LLC; JMC INDUSTRIES LLC; LANDES CAPITAL MANAGEMENT, LLC; KINGDOM TRUST LLC; HERBERT CASWELL; ANNE MANCUSO; and TYLER MANCUSO,<br><br>Relief Defendants. | No. 2:20-cv-01184-TLN-AC<br><br>**ORDER** |

///

///

///

1

Presently before the Court are Plaintiff Commodity Futures Trading Commission's ("CFTC") multiple contempt motions filed against Defendants and Relief Defendants John D. Black ("Black") and the three entities under his control (Financial Tree, Financial Solution Group ("Financial Solution"), and New Money Advisors, LLC ("New Money") (collectively, the "Black Entities")), Christopher Mancuso ("Mancuso"), Joseph Tufo ("Tufo"), Suisse Group (USA) LLC ("Suisse Group"), JMC Industries LLC ("JMC"), Herbert Caswell ("Caswell"), Anne Mancuso, and Tyler Mancuso (collectively, "Contempt Parties") for failure to comply with the provisions of this Court's Statutory Restraining Order ("SRO") (ECF No. 9) and Preliminary Injunction ("PI") (ECF No. 33).[1]  None of the Contempt Parties have filed any response to CFTC's motions.

For the reasons set forth below, CFTC's contempt motions are GRANTED.  (ECF Nos. 24, 29, 54, 66, 86, 94.)

I.   **FACTUAL AND PROCEDURAL BACKGROUND**[2]

The parties are familiar with the facts of this case and only those relevant to the issues currently before the Court will be reiterated here.  On June 15, 2020, CFTC filed a Complaint against the Contempt Parties as well as Defendants and Relief Defendants John P. Glenn ("Glenn"), The Law Firm of John Glenn, P.C. (the "Glenn Law Firm"), Landes Capital Management, LLC ("Landes"), and Kingdom Trust LLC ("Kingdom").  (ECF No. 1.)  The Complaint alleges Defendants violated multiple provisions of the Commodity Exchange Act ("Act") and Commission Regulations ("Regulations") by engaging in a Ponzi scheme, whereby they fraudulently solicited customers to invest in future trades, did not actually use the money to trade on investors' behalf, and paid the old investors "returns" from funds they obtained from

///

---

[1]   On August 13, 2020, CFTC additionally filed a "Reply" with respect to its contempt motion against Mancuso, which does not actually reply to any briefing filed by Mancuso but instead supplements CFTC's original motion by identifying additional and different violations of the PI purportedly committed by Mancuso subsequent to the actions described herein.  (ECF No. 54.)  The Court construes this Reply briefing as an additional contempt motion against Mancuso.

[2]   Unless otherwise noted, the following facts are derived from CFTC's briefs and its supporting records and declarations.  For ease of reference, the Court will refer to the ECF pagination for the attached exhibits.

later, fraudulently-solicited investors. (*Id.*) CFTC maintains Defendants have defrauded their investors of approximately $14.32 million. (*Id.*)

On the same date that it filed its Complaint, CFTC also filed an *Ex Parte* Motion for SRO, which the Court granted on July 2, 2020. (ECF Nos. 3, 9.) Pursuant to Section IV(A) of the SRO, all Defendants and Relief Defendants were

> immediately RESTRAINED AND ENJOINED, except as otherwise ordered by this Court, from directly or indirectly withdrawing, transferring, removing, dissipating, or otherwise disposing of any Assets, wherever located, including Defendants' and Relief Defendants' Assets[3] held outside the United States.

(ECF No. 9 at 20–21.)

Section IV(B) of the SRO required Defendants and Relief Defendants to maintain their Records[4] and permit CFTC immediate access, specifically:

> Defendants and Relief Defendants are hereby RESTRAINED from directly or indirectly destroying, altering, or disposing of, in any manner, any Records that relate or refer to the business activities or business or personal finances of any Defendant or Relief Defendant.
>
> Defendants and Relief Defendants are hereby ORDERED to immediately allow representatives of CFTC to inspect any Records relating or referring to the business activities or business or personal finances of Defendants and Relief Defendants, . . . promptly identify and provide CFTC's staff with the location of all Records . . . [and],

---

[3] As defined by the SRO and PI, "Assets" encompasses any legal or equitable interest in, right to, or claim to any real or personal property, whether individually or jointly, or directly or indirectly controlled, and wherever located, including but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at other financial institutions), credits, receivables, lines of credit, contracts (including spot, futures, options, or swaps contracts), insurance policies, retainers held by agents for the provision of professional or other services, and all funds, wherever located, whether in the United States or outside the United States. (*See* ECF No. 9 at 2 n.1.)

[4] As defined by the SRO and PI, "Records" encompasses the terms "document" and "electronically stored information" ("ESI") as those terms are used in Federal Rule of Civil Procedure 34(a). The term "Records" also refers to each and every such item in Defendants' and Relief Defendants' actual or constructive possession, including but not limited to: (i) all such items within the custody or control of any agents, employers, employees, or partners of the Defendants and Relief Defendants; and (ii) all items which Defendants and Relief Defendants have a legal or equitable right to obtain from another person. A draft or non-identical copy is a separate item within the meaning of the term. A Record also includes the file and folder tabs associated with each original and copy. (*See id.* at 2 n.2.)

3

> in light of the COVID-19 pandemic, . . . shall allow representatives of CFTC to make copies of documents . . . on-site [or] off-site . . . .

(*Id.* at 21–22.) The SRO additionally instructed Defendants and Relief Defendants to:

> promptly contact CFTC's counsel to assert any claims of privilege or other legal objections . . . and promptly cooperate with CFTC's counsel to develop reasonable protocols to isolate and prevent disclosure of claimed privileged and/or other nonbusiness, nonfinancial materials . . . .

(*Id.* at 21.) The SRO additionally contemplated that Defendants or Relief Defendants might raise a "valid assertion of their respective rights against self-incrimination under the Fifth Amendment." (*Id.* at 22.) Nevertheless, absent a "valid assertion" of rights, the SRO noted that "nothing herein shall excuse Defendants or Relief Defendants from full and immediate compliance with this Court's Order permitting CFTC to inspect the books and Records which relate to Defendants' or Relief Defendants' business activities and their business and personal finances." (*Id.* at 21–22.)

On July 28, 2020, the Court issued a PI that continues the terms set forth in the SRO and additionally prohibits Defendants from committing future violations of the Act and Regulations or engaging in commodity-related activities. (ECF No. 33 at 17–20.) Specifically, under Section IV(A) of the PI, Defendants are prohibited from directly or indirectly:

> 1. Trading on or subject to the rules of any registered entity (as that term is defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018));
>
> 2. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2019)), for accounts held in the name of any Defendant or for accounts in which any Defendant has a direct or indirect interest;
>
> 3. Having any commodity interests traded on any Defendant's behalf;
>
> 4. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;
>
> 5. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity interests;
>
> 6. Applying for registration or claiming exemption from registration with CFTC in any capacity, and engaging in any activity requiring

such registration or exemption from registration with CFTC except as provided for in Regulation 4.14(a)(9) (17 C.F.R. § 4.14(a)(9) (2019)); and

7. Acting as a "Principal" (as that term is defined in Regulation 3.1(a) (17 C.F.R. § 3.1(a) (2019))), agent, or any other officer or employee of any "Person" (as that term is defined in Section 1a(38) of the Act (7 U.S.C. § 1a(38) (2018))), that is registered, exempted from registration, or required to be registered with CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9).

(ECF No. 33 at 17–18.)

Finally, Section IV(E) of the PI additionally requires "each Defendant and Relief Defendant [to] file with the Court and serve upon CFTC a sworn statement and accounting, with complete documentation, covering the period from January 1, 2015 to the present." (*Id.* at 19.) Defendants and Relief Defendants' accountings were due by August 27, 2020. (*See id.*) A review of the docket reflects that the only parties who have filed the required accounting and sworn statement with the Court are Defendants Glenn and the Glenn Law Firm. (*See* ECF Nos. 71–72, 76.)

As of the filing date of this Order, default has been entered against Mancuso, the Black Entities, Tufo, Kingdom, Landes, Anne Mancuso, Tyler Mancuso, Caswell, JMC, and Suisse Group for their failure to timely respond to the Complaint.[5] (ECF Nos. 49, 50, 58.) Following issuance of the SRO and PI, CFTC has filed multiple motions seeking to hold nearly all of the Defendants and Relief Defendants in civil contempt for their failure to comply with the provisions of this Court's SRO and PI. (ECF Nos. 24, 29, 54, 66, 86, 94.) No responses were filed to CFTC's motions, which have all been deemed submitted on the pleadings before this Court. (*See* ECF Nos. 56, 87, 95, 98.)

## II.   LEGAL STANDARD

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966). Civil contempt sanctions serve "to

---

[5]   The Clerk additionally entered default against Black on August 5, 2020. (ECF No. 50.) However, Black subsequently moved for an order setting aside the default and the Court granted the motion. (ECF Nos. 77, 96.)

1 coerce obedience to a court order, or to compensate the party pursuing the contempt action for
2 injuries resulting from the contemptuous behavior." *Commodity Futures Trading Comm'n. v.*
3 *Emerald Worldwide Holdings, Inc. (Emerald)*, No. CV03-8339AHM, 2004 WL 3186580, at *2
4 (C.D. Cal. Jul. 29, 2004) (quoting *Gen. Signal v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir.
5 1986)).

6 In order to obtain contempt sanctions, the moving party must demonstrate by clear and
7 convincing evidence that the other party violated "a specific and definite court order by failure to
8 take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette*
9 *Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). The moving party need not establish
10 the violations were willful or intentional. *See id.* Once the moving party establishes the
11 violation, the burden shifts to the alleged contemnor to produce evidence justifying his non-
12 compliance. *Emerald*, 2004 WL 3186580, at *2. Recognized defenses to civil contempt include
13 (1) substantial compliance, and (2) an inability to comply. *Id.*; *U.S. v. Ayres*, 166 F.3d 991, 994
14 (9th Cir. 1999); *Fed. Trade Comm'n v. Gill (Gill)*, 183 F. Supp. 2d 1171, 1183 (C.D. Cal. 2001).
15 Good faith or intent in attempting to comply is immaterial. *Pac. Coast Surgical Ctr., L.P. v.*
16 *Scottsdale Ins. Co.*, 2:18-cv-3904, 2019 WL 4267764, at *5 (C.D. Cal. July 31, 2019). With
17 respect to the second defense, the alleged contemnor bears the burden of making "a categorical,
18 detailed showing" of his inability to comply. *S.E.C. v. Bankers All. Corp. (Bankers)*, 881 F.
19 Supp. 673, 683 (D.D.C. 1995); *Nat'l Lab. Rel. Bd. v. Trans Ocean Export Packing, Inc.*, 473 F.2d
20 612, 616 (9th Cir. 1973).

21 Once the Court determines a violation has occurred, it has broad authority in fashioning
22 appropriate relief that is reasonably calculated to compel obedience with the prior court order.
23 *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949) ("The measure of the court's
24 power in civil contempt proceedings is determined by the requirements of full remedial relief.").
25 This includes per diem fines, compensatory damages, conditional incarceration, and reasonable
26 attorneys' fees and expenses. *See Bankers*, 881 F. Supp. at 684 (issuing graduated schedule of
27 daily fines and ordering conditional incarceration to gain compliance); *Shillitani*, 384 U.S. at
28 370–71 (upholding order of conditional incarceration); *Perry v. O'Donnell*, 759 F.2d 702, 704–06

1   (9th Cir. 1985) (affirming award of attorneys' fees and costs).  The district court "should apply
2   the least coercive sanction (e.g., a monetary penalty) reasonably calculated to win compliance
3   with its orders." *U.S. v. Flores*, 628 F.2d 521, 527 (9th Cir. 1980).  Nevertheless, the Ninth
4   Circuit "defer[s] considerably to the judgment of the district court in fashioning the appropriate
5   sentence because of its proximity to the events out of which the contempt springs," and will only
6   disturb the district court's judgment if it has abused its discretion.  *Id.*

### III. ANALYSIS

CFTC argues the Contempt Defendants have violated the SRO and PI by: (1) refusing to permit CFTC to inspect their Records (ECF Nos. 24, 29, 66); (2) violating the Act and Regulations (ECF No. 54); (3) failing to submit the required sworn statement and accounting (ECF Nos. 66, 94); and (4) dissipating assets (ECF No. 86).  As a result of Contempt Defendants' conduct, CFTC seeks an order to show cause as to why each Contempt Defendant should not be held in civil contempt and subject to appropriate sanctions.  (*See* ECF No. 24 at 1–2; ECF No. 29 at 1; ECF No. 54 at 2; ECF No. 66 at 1–2; ECF No. 86 at 1; ECF No. 94 at 1.)  The Court will address each of these contentions and the evidence proffered by CFTC in turn, as they pertain to each Contempt Defendant.

#### A. Black and the Black Entities

CFTC asserts it emailed Black and the Black Entities (through Black, in his capacity as the controlling person and representative of the Black Entities) copies of the SRO and related documents on July 7, 2020, and effected formal service on Black and the Black Entities on July 8, 2020.  (ECF No. 24 at 3; ECF No. 24-1 at 5–6; ECF Nos. 19–22.)  CFTC also provided Black and the Black Entities additional notice via email on July 30 and August 28, 2020, that the sworn statements and accountings were due pursuant to the terms of the PI.  (ECF No. 66 at 5; ECF No. 66-2 at 2; ECF No. 66-9.)  Thus, Black and the Black Entities received timely actual notice and were aware of the requirements set forth in the SRO and PI.  Yet Black and the Black entities nevertheless violated the SRO and PI when they refused to permit CFTC to inspect documents (ECF No. 24) and failed to provide a sworn statement and accounting (ECF No. 66).  CFTC further maintains Black dissipated assets in violation of the PI.  (ECF No. 86).

1                      *i.*        *Refusal to Permit Inspection of Documents (ECF No. 24)*

2         CFTC claims Black and the Black Entities violated Section IV(B) of the SRO and Section IV(C) of the PI, which require all Defendants and Relief Defendants to produce documents or electronic equipment to CFTC for inspection and permit CFTC to inspect relevant documents. (ECF No. 24; *see also* ECF No. 9 at 21–24; ECF No. 33 at 18.)

6         On July 8, 2020, following receipt of the SRO and related documents, Black sent CFTC a reply email, acknowledging receipt of the documents and stating, "I will respond with legal counsel." (ECF No. 24 at 3; ECF No. 24-1 at 4.) However, the attorney previously in discussions to represent Black confirmed to CFTC that he will not represent Black. (ECF No. 24 at 3; ECF No. 24-2 at 2.) Thereafter, Black refused to respond to CFTC's attempts to discuss document collection. (*See* ECF No. 24 at 3–4; ECF No. 24-1 at 2–4.)

12         CFTC maintains that, to date, Black and the Black Entities have refused to participate in any calls with CFTC regarding document collection, have not produced any documents or electronic equipment to CFTC for inspection, and have not provided any other information to CFTC to facilitate inspection. (ECF No. 24 at 4–5; ECF No. 66 at 4.) Black and the Black Entities have not submitted any opposition to CFTC's motion and therefore fail to rebut its claims. For these reasons, the Court finds that CFTC has provided clear and convincing evidence that Black and the Black Entities violated Section IV(B) of the SRO and Section IV(C) of the PI.

19                      *ii.*       *Failure to Submit a Sworn Statement and Accounting (ECF No. 66)*

20         CFTC claims Black and the Black Entities violated Section IV(E) of the PI, which requires all Defendants and Relief Defendants to file with the Court and serve on CFTC a sworn statement and accounting related to their financial records by August 27, 2020. (*See* ECF No. 66; ECF No. 33 at 19–20.)

24         On September 1, 2020, Black's criminal counsel informed CFTC she had advised Black that he had a Fifth Amendment right "not to incriminate himself through a sworn declaration and accounting that could possibly be inculpatory." (ECF No. 66 at 5; ECF No. 66-4 at 4.) To date, Black and the Black Entities have not provided the sworn statements and accountings required by the PI. (ECF No. 66 at 5, 7.) Nor have they filed these documents with the Court. (*See generally*

1   docket, 2:20-cv-01184.)  These facts alone establish a violation of the PI.  *See Bankers*, 881 F.

2   Supp. at 679 (citing *S.E.C. v. Current Fin. Services, Inc.*, 798 F. Supp. 802, 808 (1992)) ("Failure

3   to comply fully with an order to provide an accounting is itself a valid basis for a finding of

4   contempt.").

5     Further, CFTC argues the declaration of Black's criminal counsel is insufficient to excuse

6   him from compliance with the PI because: (1) Black has not moved to amend the PI to seek relief

7   from the Order; and (2) a mere blanket assertion of Fifth Amendment protections is insufficient.

8   (ECF No. 66 at 7–8.)  The Court agrees that Black's attempt to avoid the entirety of the

9   production requirements set forth under the PI by way of a blanket invocation of the Fifth

10  Amendment is unavailing.

11    The Court must construe the privilege against self-incrimination broadly and must sustain

12  it if it is "evident from the implications of the question, in the setting in which it is asked, that a

13  responsive answer . . . might be dangerous because injurious disclosure could result." *Hoffman v.*

14  *U.S.*, 341 U.S. 479, 486–87 (1951).  Nevertheless, where the incriminating nature of the response

15  is not readily apparent to the court, the party invoking the Fifth Amendment is not excused from

16  answering "merely because he declares that in so doing he would incriminate himself." *Id.* at

17  486; *see also Ueckert v. C.I.R.*, 721 F.2d 248, 250 (8th Cir. 1983) ("[T]he claimant cannot be the

18  sole arbiter of whether the information sought would tend to incriminate.  The court must decide

19  whether his silence is justified.").  Rather, the party invoking the Fifth Amendment must have

20  "reasonable cause to apprehend a real danger of incrimination" and must specify with "clear,

21  credible reasons" how he would be injured by any specific question or answer.  *See Steinbrecher*

22  *v. C.I.R.*, 712 F.2d 195, 198 (5th Cir. 1983) (party must indicate the issues from which he fears

23  prosecution); *see also Bankers*, 881 F. Supp. at 680 (citing *In re Morganroth*, 718 F.2d 161, 167

24  (6th Cir. 1983)).  A blanket assertion of the privilege is therefore insufficient.  *See Steinbrecher*,

25  712 F.2d at 197–98 (rejecting defendants' bald assertion that, if they answered any questions or

26  produced any evidence, the information thereby revealed might be used against them);

27  *Morganroth*, 718 F.2d at 167.

28  / / /

Here, the Court acknowledges it may be possible, given Black's current status as a defendant in the parallel criminal matter, to properly invoke Fifth Amendment protection against providing certain responses to CFTC. However, that matter is not currently before the Court because Black has not submitted any motion seeking relief from the requirements of the PI, let alone any other filing asserting a Fifth Amendment privilege with respect to the production requirements set forth in the PI. *See U.S. Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 464 F. Supp. 3d 665, 668–69 (S.D.N.Y. 2020) (party was required to affirmatively seek modification of the at-issue portion of the TRO with the court rather than merely decline to comply with that provision). Indeed, Black did not file any opposition to CFTC's initial motions seeking a TRO or PI, nor has he opposed CFTC's instant contempt motions. The Court construes such silence as a statement of non-opposition. *See S.E.C. v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) ("a district court has discretion in its response to a party's invocation of the Fifth.") Further, Black's blanket assertion of Fifth Amendment protections is insufficient because he must articulate which portion of the PI he refuses to comply with, and the precise factual and legal bases for the refusal to comply. *Steinbrecher*, 712 F.2d at 198; *Bankers*, 881 F. Supp. at 680; *Morganroth*, 718 F.2d at 167.

Finally, to the extent Black seeks to invoke Fifth Amendment protection on behalf of the Black Entities, his assertion is unavailing because corporate and entity defendants may not refuse to provide an accounting on Fifth Amendment grounds. *Bellis v. U.S.*, 417 U.S. 85, 89–90 (1974) (collective entities may not invoke the Fifth Amendment because they are legal entities distinct from their members); *Braswell v. U.S.*, 487 U.S. 99, 118–19 (1988) (an individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally); *see also U.S. v. Feng Juan Lu*, 248 F. App'x 806, 807–08 (9th Cir. 2007) (Fifth Amendment protection does not apply to production of business records, even when business has only a single employee who also serves as the sole officer).

/ / /

/ / /

For these reasons, the Court finds that CFTC has provided clear and convincing evidence that Black and the Black Entities violated Section IV(E) of the PI and Black's blanket assertion of Fifth Amendment privilege is unavailing.

### iii. Dissipation of Assets (Black only) (ECF No. 86)

CFTC claims Black violated Section IV(A) of the SRO (incorporated by Section IV(B) of the PI) prohibiting the withdrawal, transfer, removal, dissipation, or other disposal of assets. (ECF No. 86; *see also* ECF No. 9 at 20–21; ECF No. 33 at 18.)  Specifically, CFTC contends Black acted in violation of the prohibition against dissipating assets: (1) on July 14, 2020, when he mailed a $2,936.60 check to pay an insurance premium on a whole life insurance policy for which he is the beneficiary; (2) on July 21, 2020, when he issued a $5,000 check to an attorney who was considering representing him at the time; and (3) on July 28, 2020, when Black's alleged daughter wired $14,600 on his behalf to the same attorney.[6]  (*See* ECF No. 86 at 3–4; ECF No. 86-1 at 2–3; ECF Nos. 86-2, 86-3.)

The SRO restrained Black "from directly or indirectly" dissipating assets, including "bank accounts" and "funds" that Black "directly or indirectly controlled."  (ECF No. 9 at 2 n.1, 20–21.)  The Court is satisfied that CFTC has sufficiently established Black exercised control over the identified accounts and indirectly dissipated assets from them.  (*See* ECF No. 86-1 at 2–3; ECF Nos. 86-2, 86-3.)  Black has not submitted any opposition to CFTC's motion and therefore fails to rebut its claims.  For these reasons, the Court finds CFTC has provided clear and convincing evidence that Black violated Section IV(A) of the SRO.

### B. Mancuso

Mancuso had sufficient notice of the requirements of the SRO because CFTC emailed copies of the SRO and related documents on July 7, 2020, and effected service on Mancuso on July 12.  (*See* ECF No. 29 at 3; ECF 29-1 at 10–13.)  Further, CFTC emailed courtesy copies of the PI to Mancuso on July 30.  (ECF No. 54 at 3; ECF No. 54-3.)  Yet Mancuso nevertheless

---

[6] CFTC additionally submits evidence that Black wired $57,000 with the memo line "FROM JOHN BLACK" to an account controlled by Mancuso on June 26, 2020, but acknowledges this transaction occurred before the Court issued the SRO and therefore does not directly constitute a violation of the SRO.  (*See* ECF No. 86 at 3; ECF No. 86-1 at 2.)

violated the SRO and PI when he refused to permit CFTC to inspect documents (ECF No. 29), committed continuing violations of the Act and Regulations (ECF No. 54), and failed to provide a sworn statement and accounting (ECF No. 66).

### *i. Refusal to Permit Inspection of Documents (ECF No. 29)*

CFTC claims Mancuso violated the requirements of Section IV(B) of the SRO and Section IV(C) of the PI that all Defendants and Relief Defendants produce documents or electronic equipment to CFTC for inspection and permit CFTC to inspect relevant documents. (ECF No. 29; *see also* ECF No. 9 at 21–24; ECF No. 33 at 18.)

On July 8, 2020, Mancuso sent CFTC an email stating that he was attempting to find an attorney and would "be in touch soon," but refused to communicate with CFTC in the meantime. (ECF No. 29 at 3; ECF 29-1 at 9–10.) On July 15, Mancuso and attorneys not yet engaged to represent him joined CFTC on a preliminary document collection call. (ECF No. 29 at 3; ECF No. 29-3 at 2.) At that time, Mancuso invoked the Fifth Amendment and refused to provide any devices or documents to CFTC, on the basis that the "act of production" doctrine shielded all devices and documents from surrender.[7] (*Id.*) CFTC maintains that, to date, Mancuso has refused to produce any documents or electronic equipment to CFTC for inspection. (ECF No. 29 at 5; ECF No. 29-3 at 2; ECF No. 54 at 2; ECF No. 54-1 at 3; ECF No. 66 at 4.)

The Court finds CFTC has met its initial burden and Mancuso's refusal to produce any devices or documents based on a blanket assertion of Fifth Amendment protections is invalid for several reasons. First, as previously discussed, blanket assertions of Fifth Amendment protections are insufficient. *Steinbrecher*, 712 F.2d at 198; *Morganroth*, 718 F.2d at 167; *see also SEC v. Caramadre*, 717 F. Supp. 2d 217, 224 (D.R.I. 2010) (requiring "act of production" objections to be raised with respect to each responsive document, as in a privilege log). Second, as the conduct alleged against Mancuso in the Complaint applies to his actions as agent of the Black Entities (*see generally* ECF No. 1; ECF No. 29 at 5–6), CFTC is seeking production of

---

[7] On July 16, the attorneys informed CFTC they would not be representing Mancuso. (*Id.*) Thereafter, Mancuso refused to respond to CFTC's attempts to communicate. (ECF No. 29 at 4; *see also* ECF No. 29-3 at 2 (citing ECF No. 29-2).)

business records which are not entitled to Fifth Amendment protections. *Braswell*, 487 U.S. at 108–09; *Bellis*, 417 U.S. at 88, 90; *see also U.S. v. Hubbell*, 530 U.S. 27, 35–36 (2000) (Fifth Amendment does not apply to the contents of voluntarily prepared and previously generated documents — such as tax documents and business records prepared in compliance with regulatory requirements — even though they may contain incriminating information). Third, the Fifth Amendment does not apply to electronic devices. *See F.T.C. v. PointBreak Media, LLC*, 343 F. Supp. 3d 1282, 1286 (S.D. Fla. 2018) (surrender of electronic devices is not a testimonial communication for which defendants can invoke a Fifth Amendment objection) (citing *Hubbell*, 530 U.S. at 35).

Mancuso has not submitted any opposition to CFTC's motion and therefore fails to rebut its claims. For these reasons, the Court finds that CFTC has provided clear and convincing evidence that Mancuso violated Section IV(B) of the SRO and Section IV(C) of the PI.

>  *ii.  Continued Violation of the Act and Regulations (ECF No. 54)*

CFTC claims Mancuso violated Section IV(A) of the PI, which prohibits Defendants from violating the Act and Regulations or engaging in any commodity-related activities. (ECF No. 54; ECF No. 33 at 17–18.)

CFTC has submitted evidence that, as recently as August 9, 2020, Mancuso is continuing to: (1) make new, fraudulent excuses for failure to repay funds; and (2) promise that Defendants will repay principal plus profits by September 15, 2020. (ECF No. 54 at 1–3; ECF No. 54-1 at 2–3 (describing Aug. 4, 2020 recording of telephone call between Mancuso and pool participant); ECF No. 54-2 (emails between Mancuso and pool participants dated May 19, 2020–July 17, 2020).) Moreover, Mancuso is discouraging pool participants from providing documents to CFTC and threatening that pool participants will not be repaid if they speak to CFTC. (ECF No. 54 at 2.)

Based on this record, CFTC maintains Mancuso's actions occurring after July 28, 2020, violate Section IV(A) of the PI. (*See generally id.*; *see also* ECF No. 33 at 17–18.) The Court agrees. Moreover, Mancuso has not submitted any opposition to CFTC's motion and therefore

///

fails to rebut its claims.  For these reasons, the Court finds that CFTC has provided clear and convincing evidence that Mancuso has violated Section IV(A) of the PI.

                *iii.*      *Failure to Submit a Sworn Statement and Accounting (ECF No. 66)*

CFTC claims Mancuso violated Section IV(E) of the PI, which requires all Defendants and Relief Defendants to file with the Court and serve on CFTC a sworn statement and account related to their financial records by August 27, 2020.  (ECF No. 66; ECF No. 33 at 19–20.)

CFTC asserts it provided Mancuso additional notice via email on July 30, 2020, and August 28, 2020, that his sworn statement and accounting was due pursuant to Section IV(E) of the July 28, 2020 PI.  (ECF No. 66 at 5; ECF No. 66-2 at 2; ECF No. 66-5.)  However, to date, Mancuso has failed to serve the required documents on CFTC or file them with the Court.  (*See* ECF No. 66 at 5, 7; ECF No. 66-2 at 2.)  Moreover, Mancuso has not submitted any opposition to CFTC's motion and therefore fails to rebut its claims.  For these reasons, the Court finds that CFTC has provided clear and convincing evidence that Mancuso has violated Section IV(E) of the PI.

       C.     <u>Tufo</u>

                *i.*      *Failure to Submit a Sworn Statement and Accounting (ECF No. 94)*

CFTC claims Tufo violated Section IV(E) of the PI, which requires all Defendants and Relief Defendants file with the Court and serve on CFTC a sworn statement and account related to their financial records by August 27, 2020.  (ECF No. 94; ECF No. 33 at 19–20.)  Specifically, CFTC asserts Tufo has refused to provide: (1) certain information relating to a currently open account; (2) a sworn statement regarding the information he did provide; and (3) any required supporting documents.  (ECF No. 94 at 6.)

Tufo received actual notice of his obligations under the SRO and PI when CFTC served Tufo with the Complaint, SRO, and related papers on July 8, 2020 (ECF No. 16), and emailed a reminder to Tufo of the requirement to provide a sworn statement and accounting on July 30, 2020.  (ECF No. 94 at 3; ECF No. 94-1 at 2.)  Between August 28 and September 23, 2020, CFTC exchanged multiple communications with Tufo to discuss and summarize certain accounting-related information Tufo provided orally and in writing.  (*Id.*; *see also* ECF No. 94-2.)

However, Tufo provided inconsistent information and was evasive during calls. (*See* ECF No. 94 at 3; ECF No. 94-2.) CFTC submits evidence demonstrating this inconsistent information on two occasions:

1) During a call on September 2, 2020, Tufo initially repeated, multiple times, that he had no accounts other than one business account which CFTC froze and two other long-closed business accounts, and no personal bank accounts. When asked how he buys food, Tufo attempted to change the subject several times, but eventually stated he uses cash. When asked what cash he uses, Tufo initially stated he used money from a safe containing $16,000; however, the California DOJ seized that cash in a related criminal matter. Tufo next stated he used money from a wallet containing several hundred dollars; however, this was inconsistent with Tufo's prior statement to CFTC that he had no assets and relied only on Social Security to live. When asked where he deposits his Social Security checks, Tufo attempted to change the subject multiple times but ultimately stated he did not know. Thereafter, Tufo admitted he received a physical check that he cashed, and that he maintains an account at Bluebird (by American Express). Thereafter, Tufo additionally admitted he had also recently opened a Patelco Credit Union account. (*See* ECF No. 94 at 3–4; ECF No. 94-1 at 2–3; *see also* ECF No. 94-2.)

2) During a communication with Tufo on September 23, 2020, Tufo refused to call Bluebird or Patelco Credit Union to obtain relevant bank statements for CFTC, on the basis that he would be forced to speak to someone "in the Philippines whose accent you can't understand" and spend too much time on the phone. Tufo further refused to provide CFTC the account number, current balance, or account statements for his Bluebird account or Patelco Credit Union account. And Tufo refused to confirm the accuracy of CFTC's summary of the information Tufo previously conveyed. Thereafter, Tufo refused to provide CFTC any information, "on the advice of his criminal attorney." (*See* ECF No. 94 at 4–5; ECF No. 94-1 at 3–4; *see also* ECF No. 94-2 at 2–4.)

1      To date, Tufo has failed to serve the required documents on CFTC or file them with the
2 Court. (*See* ECF No. 94 at 6; *see also* ECF No. 94-1 at 3–4; ECF No. 94-2 at 2.) On this basis
3 alone, he has violated Section IV(E) of the PI. *See Bankers*, 881 F. Supp. at 679 (citing *Current*
4 *Fin. Services, Inc.*, 798 F. Supp. at 808) ("Failure to comply fully with an order to provide an
5 accounting is itself a valid basis for a finding of contempt.").

6      Further, the scant, unverified information Tufo has provided — which can fairly be
7 described as inconsistent, incomplete, and at times incredible (*see generally* ECF No. 94-2) — is
8 insufficient to be deemed "substantial compliance" with the PI's requirement of a sworn
9 statement and accounting. *See Gill*, 183 F. Supp. 2d at 1183. To the extent Tufo's refusal to
10 respond to CFTC on the basis that "[his] attorney advises against it" (*see* ECF No. 94-2 at 2) may
11 be construed as an invocation of his Fifth Amendment privilege, the Court finds Tufo's blanket
12 invocation is unavailing. *See Steinbrecher*, 712 F.2d at 198; *Morganroth*, 718 F.2d at 167; *see*
13 *also S.E.C. v. Parkersburg Wireless Ltd. Liab. Co.*, 156 F.R.D. 529, 535 (1994) (citing *Rogers v.*
14 *U.S.*, 340 U.S. 367, 373 (1951) (where incriminating facts have been voluntarily revealed, the
15 privilege has been lost by waiver and cannot be invoked to avoid disclosure of the details)).
16 Finally, the Court notes Tufo has not submitted any opposition to CFTC's motion and therefore
17 fails to rebut its claims.

18     For these reasons, the Court finds CFTC has provided clear and convincing evidence that
19 Tufo violated Section IV(E) of the PI.

20          D.     Suisse Group, JMC, Caswell, Anne Mancuso, and Tyler Mancuso (ECF
21                 No. 66)

22     CFTC claims Relief Defendants Suisse Group, JMC, Caswell, Anne Mancuso, and Tyler
23 Mancuso violated the requirements of Section IV(B) of the SRO and Section IV(C) of the PI that
24 all Defendants and Relief Defendants produce documents or electronic equipment to CFTC for
25 inspection and permit CFTC to inspect relevant documents. (ECF No. 66; *see also* ECF No. 9 at
26 21–24; ECF No. 33 at 18.) Additionally, CFTC claims these Contempt Defendants violated
27 Section IV(E) of the PI, requiring a sworn statement and accounting be served on CFTC and filed
28 with the Court by August 27, 2020. (ECF No. 66; ECF No. 33 at 19–20.)

1    CFTC maintains it engaged in extensive correspondence with these Contempt Defendants
2    with respect to the requirements of the SRO and PI to produce and permit inspection of
3    documents and records, as well as the requirement to submit a sworn statement and accounting.
4    (ECF No. 66 at 4–5; *see* ECF No. 66-1 at 2; ECF No. 66-2 at 2; ECF Nos. 66-6, 66-7, 66-8.)
5    CFTC additionally reiterated Tyler's obligations to comply with the Court's Orders during a
6    phone call with him on July 30, 2020.  (*See* ECF No. 66-3 at 2.)  Yet, to date, these Contempt
7    Defendants have all refused to permit inspection of relevant records by CFTC.  (ECF No. 66 at 4,
8    7; *see also* ECF No. 66-2 at 2.)  Further, they have all failed to file or serve the required sworn
9    statement and accounting pursuant to Section IV(E) of the PI.  (*See id.*)
10   None of these Contempt Defendants has submitted any opposition to CFTC's motion and
11   therefore each fails to rebut CFTC's claims.  For these reasons, the Court finds CFTC has
12   provided clear and convincing evidence that Suisse Group, JMC, Caswell, Anne Mancuso, and
13   Tyler Mancuso have violated Section IV(B) of the SRO and Sections IV(C) and (E) of the PI.
14   **IV.   CONCLUSION**
15   Based on the record and the evidence submitted in support of each of CFTC's contempt
16   motions, the Court finds CFTC has provided clear and convincing evidence that each of the
17   Contempt Defendants violated provisions of the SRO and PI as detailed herein.  The burden now
18   lies with each Contempt Defendant to produce evidence justifying his non-compliance.  *Emerald*,
19   2004 WL 3186580, at *2.
20   Accordingly, it is hereby ordered that CFTC's contempt motions (ECF Nos. 24, 29, 54,
21   66, 86, 94) are GRANTED.  Contempt Defendants John D. Black, Financial Tree, Financial
22   Solution Group, New Money Advisors, LLC, Christopher Mancuso, Joseph Tufo, Suisse Group
23   (USA) LLC, JMC Industries LLC, Herbert Caswell, Anne Mancuso, and Tyler Mancuso are
24   ORDERED to show cause in writing not later than March 15, 2021, as to why they should not be
25   held in civil contempt for their violations of the SRO and PI and why the Court should not order
26   appropriate contempt sanctions, including paying CFTC's attorneys' fees and costs related to the
27
28

1  expenses of bringing these contempt motions, daily coercive fines, or coercive confinement.[8]

2  Such briefings shall be filed and served by the aforementioned date.  The CFTC may file and

3  serve a reply not later than March 22, 2021.

4       IT IS SO ORDERED.

5  DATED:  February 24, 2021

 

                       Troy L. Nunley
                       United States District Judge

---

[8] Even though the Clerk of the Court has entered default against Mancuso, the Black Entities, Tufo, Anne Mancuso, Tyler Mancuso, Caswell, JMC, and Suisse Group, the Court acknowledges these Contempt Defendants may make a limited appearance on the instant matter, pursuant to the terms of this Order.  The Court additionally reminds the parties that only a practicing attorney may represent a corporation or other entity (such as Financial Tree, Financial Solution, or New Money).  Thus, any response to the Order to Show Cause filed on behalf of a corporate entity by a *pro se* party will be stricken from the record. E.D. Cal. L.R. 183(a).

18